## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DANA TERLECKY,**

     **Plaintiff,**

          v.                                **CIV. 04-1121BB/DJS**

**CITY OF RUIDOSO DOWNS, a**

**Municipal Corporation, et al.**

     Defendants.

### PLAINTIFF'S REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Come now the Plaintiff by and through his attorneys, Steven K. Sanders & Associates, L.L.C. (Steven K. Sanders) and Freda Howard McSwane, P.C. (Freda Howard McSwane) and submits the following pre-trial requested findings of fact and conclusions of law:

1.      This court has jurisdiction of this cause under 28 U.S.C. Sections 1331, 1343 and 1367.  (Pre-Trial Order, Section II. A. ¶3)

2.      The court has jurisdiction over the parties and subject matter of this action.

3.      Defendant City of Ruidoso Downs is a municipal corporation organized and existing pursuant to the laws of the State of New Mexico.  This Defendant is a person within the meaning of 42 U.S.C. 1983.  (Pre-Trial Order, Section IV. A. ¶1)

4.      Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales and Rene G. Olivo were all times material the Mayor and City Trustees each or whom acted individually and in their official capacity.  At all times relevant hereto, the acts of these Defendants complained of herein, were done under the colored pretense of statutes, ordinances, regulations, customs and

usage's of the State of New Mexico, City of Ruidoso Downs, and by virtue of each Defendants' office with the City of Ruidoso Downs.  (Pre-Trial Order, Section IV. A. ¶2)

5.      Plaintiff was an employee of Defendant City of Ruidoso Downs, which is located in Lincoln County, New Mexico.  (Pre-Trial Order, Section IV. A. ¶3)

6.      Plaintiff's employment with the City of Ruidoso Downs was governed by and subject to The City of Ruidoso Downs Personnel Policy Manual (herein Rules or Manual) and the Ruidoso Downs Police Department Policy and Procedure Manual and the New Mexico Peace Officer's Employer-Employee Relations Act, all of which created an implied contract of employment.  (Pre-Trial Order, Section IV. A. ¶3, 24, Defendants' Exhibit 1U, June 1, 2004 Interoffice Memorandum, from Logan to Hightower, Terlecky and Waters, testimony of Terlecky and Logan)

7.      Plaintiff was subject to termination only for cause.  (Pre-Trial Order, Section IV. A. ¶3)

8.      Under and by virtue of the City of Ruidoso Downs Personnel Policy Manual, Plaintiff had a legitimate expectancy of continued employment under an implied contract of employment terminable only for cause and recognized in the state of New Mexico.

9.      The City of Ruidoso Downs Personal Policy Manual establishes property rights under the laws of the State of New Mexico.  As such, Plaintiff was entitled to due process of law in the termination of his employment.

10.     The City of Ruidoso Downs Rules require *inter ala* that, an employee's immediate supervisor shall inform the employee promptly and specifically of all performance or work habit shortcomings.  Further, "It is the policy of the City to administer discipline in a progressive manner..."  (Pre-Trial Order, Section IV. A. ¶4)

11.     Only one of matters for which Plaintiff was disciplined and ultimately terminated were  addressed by his immediate supervisor.  This constitutes a breach of contract.  Progressive discipline was not administered.  This constitutes a breach of contract.

12.     Plaintiff was employed as a police officer having been hired by the City on or about August 3, 1989.  Plaintiff successfully completed his probationary period. Plaintiff was promoted to Sergeant, a classified position under the City employment categories as set out in Chapter 3, Employee categories, Rule 300.  (Pre-Trial Order, Section IV. A. ¶5)

13.     Logan was hired as police chief approximately July 2002.  (Pre-Trial Order, Section IV. A. ¶6, 31)

14.     In May, 2004 Logan was denied a raise by the City Trustees.  Additionally, he was criticized for the way in which he was running the Public Safety Department.  (Logan testimony)

15.     In response to this criticism and his failure to obtain a raise, Logan began a campaign of retaliation against Plaintiff.  (Terlecky and Logan testimony)

16.     On or about June 1, 2004, Chief Logan ordered Deputy Chief David Hightower to initiate an internal investigation into certain actions of Plaintiff.  Logan's Interoffice memorandum required that the investigation be done "in accordance with the New Mexico Peace Officer's Employer-Employee Relations Act, City of Ruidoso Downs Personnel Policy and department policies."  See N. M. S. A. 1978, § 29-14-4.  However, Plaintiff was not notified of the investigation until approximately June 10, 2004.  That day he responded to the substance of the allegations.  (Pre-Trial Order, Section IV. A. ¶7, Terlecky testimony, Defendants' Exhibit 1-U)

17.     The investigation was not done in accordance with the New Mexico Peace Officer's Employer-Employee Act in violation of Plaintiff's rights under that law and his implied contract

rights with the City. For instance, the interrogation was not recorded and the interrogation was not published as a transcript in violation of paragraph 29-14-4 E NMSA and Plaintiff was not informed of the complainants in violation of paragraph 29-14-4 C (1) and (2) of the Act. (Terlecky testimony)

18.     On or about June 14, 2004, Logan prepared two City of Ruidoso Downs Interoffice Memorandums addressed to Plaintiff and Deputy Chief Hightower.  One requested a memorandum concerning a traffic citation issued by Plaintiff that had a date and time for a court hearing when the court was not in session.  This memorandum had no deadline for responding.  The second memorandum requested probationary evaluations of the probationary officers.  Plaintiff was on days off on until June 17, 2004 and did not receive the memorandums until sometime after that date. (Pre-Trial Order, Section IV. A. ¶8, Terlecky testimony, Defendants' Exhibit 1-W, Plaintiff's Exhibit 8)

19.     Because of the internal affairs investigation referenced above, Plaintiff believed that these two memorandums were part of an arbitrary campaign of retaliation by Logan to document Plaintiff's personal file in order to secure Plaintiff's termination.  Therefore, Plaintiff sought the advice of an attorney.  (Terlecky testimony)

20.     Plaintiff completed the personnel performance evaluations timely.  (Terlecky and Logan testimony)

21.     Plaintiff with Logan's knowledge and permission was scheduled to be on days off or on vacation from June 28, 2004 until July 22, 2004 with the possible exception of a district court date on July 1, 2004 which was later cancelled. (Pre-Trial Order, Section IV. A. ¶9)

22.     Knowing that Plaintiff was scheduled to be on days off or on vacation, Logan, on the afternoon of Friday June 25, 2004 prepared another City of Ruidoso Downs Interoffice

Memorandum requesting Plaintiff's response to the first memorandum and this time giving a deadline for Monday at 0800 hours, June 28, 2004.  This memorandum was delivered by Logan by placing it in Plaintiff's office mail box late Friday afternoon.  It was not received by Plaintiff until Saturday, June 26, 2004.  The same memorandum required that Deputy Chief Hightower prepare a memorandum detailing a performance improvement plan for Plaintiff. (Pre-Trial Order, Section IV. A. ¶ 10)

23.    The performance improvement plan was never started, completed or delivered to Plaintiff by Hightower because Logan was determined to terminate Plaintiff's employment and merely wanted to document Plaintiff's employment file to make it appear that reasonable steps were being taken to remedy perceived work performance issues.  (Terlecky testimony, Hightower testimony)

24.    Plaintiff was not reasonably able to complete a response to the traffic citation memorandum because he did not have the documents to reference because he had left them at his attorney's office and he could not get in touch with his attorney over the weekend.  After learning that Logan desired a response by 8:00 a.m. on June 28, 2004, Plaintiff attempted to contact his attorney but the attorney had left the office for the weekend and Plaintiff could not get in touch with his attorney.  (Terlecky testimony)

25.    Plaintiff did reply timely to the memorandum to Logan dated June 27, 2004. (Defendants' Exhibit 1-W)

26.    Plaintiff did prepare and submit a further response concerning the traffic citations on July 8, 2004 even though Plaintiff was on vacation. (Plaintiff's Exhibit 12)

27.     Logan knew that Plaintiff had not been had any recent discipline and only one other disciplinary matter during his career with the Department.  (Logan and Terlecky testimony)

28.     After receiving the results of the Internal Investigation from Hightower which did not recommend termination of Plaintiff's employment, Logan on or about June 18, 2004 began to prepare three Uniform Notice of Disciplinary Action forms to document Plaintiff's personnel file to show that progressive discipline was being administered so that Logan could then terminate Plaintiff's employment.  (Logan, Hightower and Terlecky testimony)

29.     Four Uniform Notice of Disciplinary Action documents were prepared by Logan and approved by Dunigan and Waters.  Three are dated June 21, 2004 and the fourth dated June 25, 2004.  All were delivered to Plaintiff on or about June 29, 2004 at his home by Steve Dunigan, the City Personnel Manager.  This was the second day of Plaintiff's vacation.  (Pre-Trial Order, Section IV. A. ¶11, Terlecky and Dunigan testimony, Defendants' Exhibits 1-R, 1-S, 1-T,  and 1-U)

30.     One Notice dated June 21, 2004 claimed that Plaintiff failed to meet prescribed standards of work and stated that there had been no previous disciplinary history for similar incidents.  This memorandum stated that a written warning was the appropriate punishment for the attached incidents. This Notice was delivered to Plaintiff on June 29, 2004. (Pre-Trial Order, Section IV. A. ¶11, Terlecky and Dunigan testimony, Defendants' Exhibit 1-R)

31.     A second Notice dated June 25, 2004 pertained to improper court dates and information on two traffic citations.  It was also a written warning noting no previous similar discipline.  This memorandum is the only disciplinary action prepared by Plaintiff's immediate supervisor, Deputy Chief David Hightower. This memorandum stated that a written warning was the

appropriate punishment for the incidents. This Notice was delivered to Plaintiff on June 29, 2004.

(Pre-Trial Order, Section IV. A. ¶12, Terlecky and Dunigan testimony, Defendants' Exhibit 1-S)

32.     A third Notice is dated June 22, 2004 pertaining to excessive absenteeism and

indicates that there had been no previous discipline regarding similar incidents.  However, Plaintiff

had legitimately been sick during the preceding twelve months and the time off for this treatment

should not have been counted against Plaintiff pursuant to City rule 505 and Rule 1218.4. Further,

Plaintiff had not in fact violated Defendant Cities' Rules concerning excessive absenteeism because

the total absences did not exceed the allowable limits set by the City.  This memorandum stated that

a written warning was the appropriate punishment for the attached incidents. This Notice was

delivered to Plaintiff on June 29, 2004. (Pre-Trial Order, Section IV. A. ¶13, Terlecky and Dunigan

testimony, Defendants' Exhibit 1-T, Plaintiff's Exhibit 8)

33.     A fourth Notice dated June 21, 2004 pertained to failure to meet prescribed standards

of work, failure to follow instructions or directives and violation or disregard of personnel policies.

This notice stacked the previous written warning notices to arbitrarily increase the punishment.  It

states that there had been a previous written warning on June 21, 2004 (the same date as the Notice

which was delivered to Plaintiff at the same time as the instant Notice) and stated that Plaintiff's

punishment be a suspension from work for forty (40) hours.  This Notice was also delivered to

Plaintiff on June 29, 2004 and stated that a pre determination hearing would be held June 30th, 2004.

(Pre-Trial Order, Section IV. A. ¶14, Terlecky and Dunigan testimony, Defendants' Exhibit 1-U)

34.     Plaintiff asked Dunigan how he was to get an attorney and witnesses for a Pre-

Determination hearing to be held the next day.  Dunigan stated that the only people allowed to attend

the hearing were the City Manager, the Chief of Police, the Personnel Manager (Dunigan) and Plaintiff. (Terlecky and Dunigan testimony)

35.     On June 28, 2004, prior to the delivery of the above Notices to Plaintiff, Logan prepared yet a fifth City of Ruidoso Downs Uniform Notice of Disciplinary Action requesting Plaintiff's discharge for the same incidents referenced above plus a claim of insubordination for failure of Plaintiff to respond to the Chief's request for a memorandum concerning the mistaken citations as set out in the June 14th memorandums.   The Notice was approved and signed by Waters and signed and approved by Dunigan and delivered by Dunigan to Plaintiff's home on July 2, 2004, again during Plaintiff's vacation. (Pre-Trial Order, Section IV. A. ¶15, Terlecky, Waters and Dunigan testimony, Defendants' Exhibit 1-W)

36.     On July 1, 2004, (during Plaintiff's vacation) John P. Waters, the City Administrator of the City of Ruidoso Downs held a pre-determination hearing on the 40 hour suspension Notice and on July 2, 2004.   This hearing was attended by Waters, Terlecky, Dunigan and Hightower. During the hearing, Waters interrogated Plaintiff about his previous work history even though Plaintiff was given no notice that the hearing pertained to any matter other than the three disciplinary Notices delivered to him.   Plaintiff was not allowed to have an attorney present to represent Plaintiff, to examine and call witness and to cross examine the witnesses against Plaintiff.   Waters upheld the 40 hour suspension without pay with the suspension to take place starting July 14, 2004 through July 18, 2004 even though Plaintiff was scheduled to be and was on paid vacation.   Waters actions in interrogating Plaintiff during his vacation during a time when he was not on duty is a violation of Section 29-14-4A. N.M.S.A. of the Peace Officer's Employer-employee Relations Act which requires that interrogations be conducted "when the officer is on duty or during his normal waking

hours, unless the urgency of the investigation requires otherwise." There was no urgency for this investigation. (Pre-Trial Order, Section IV. A. ¶16, 20, 33, 34, Terlecky and Waters testimony, Defendants' Exhibit 2)

37.    On July, 2, 2004, the fifth Notice dated June 28, 2004 requesting discharge was delivered by Steve Dunigan to Plaintiff at his home along with a the Summary of Findings and Conclusion prepared by Waters upholding the 40 hour suspension. (Pre-Trial Order, Section IV. A. ¶17, Terlecky and Dunigan testimony, Defendants' Exhibit 1-W and 1-V)

38.    On August 9, 2004 Logan prepared and Waters approved yet a sixth Uniform Notice of Disciplinary Action requesting Plaintiff's termination for failure to complete reports on a timely basis. (Pre-Trial Order, Section IV. A. ¶18, Terlecky, Logan and Waters testimony, Defendants' Exhibit 1-X)

39.    Plaintiff's employment with the City was terminated by Waters on or about August 18, 2004 after a Pre Determination hearing on August 12 and 16, 2004.    During the Pre Determination hearing, Plaintiff was not allowed to have legal representation, not allowed to cross examine witnesses, not allowed to call witnesses, and was extensively questioned by Waters about incidents that were not part of the issues set out in the Uniform Notice of Disciplinary Action and for which Plaintiff was not prepared to respond. Plaintiff was not informed of and was not given notice of all the reasons for his termination prior to his informal Pre-Determination hearing.  These acts were in violation of Section 29-14-6 N.M.S.A. and Defendant's Personnel Rules and Plaintiff's right to due process which includes the right to notice of all allegations against Plaintiff prior to a full blown evidentiary hearing. (Pre-Trial Order, Section IV. A. ¶20, Terlecky testimony, Waters testimony, Defendants' Exhibit 3, Record on Review Exhibit 2)

40.     Written disciplinary action is instituted when a Uniform Notice of Disciplinary Action (UNDA) is completed.  Prior to June of 2004, Plaintiff had not received written disciplinary action. (Pre-Trial Order, Section IV. A. ¶32, Terlecky testimony)

41.     In the findings supporting termination, Waters relied upon incidents that occurred prior to the time that he worked for the City and he relied upon a demotion from Sergeant to Corporal which occurred in 1996 to support the termination knowing that the demotion had been reversed after appeal by Plaintiff under City personnel policies.  He also relied upon documents in Plaintiff's personnel file that had not been shown to Plaintiff prior to placement in the file in violation of 29-14-7 N.M.S.A. (Terlecky and Waters testimony, Defendants' Exhibit 3, Record on Review Exhibit 2)

42.     Plaintiff requested a termination hearing and appeal in accordance with the City personnel policies and the Peace Officer's Employer-Employee Relations Act.  Plaintiff through his attorney requested subpoenas for witnesses and the right to call and cross examine witnesses and present evidence before the City Trustees.  Plaintiff was denied these elementary constitutional and statutory rights.   See 29-14-6 N.MS.A.  (Plaintiff's Exhibit 9 and Defendants' Exhibit 4, Record on Review Exhibit 3)

43.     On or about September 6, 2004, Plaintiff's termination by Waters was upheld by Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales and Rene G. Olivo, without any constitutionally adequate termination hearing, i.e., a hearing at which Plaintiff was previously provided a summary of the evidence against him constituting notice of his claimed performance deficiencies, and an opportunity through counsel to call witnesses who would be required to testify under oath and cross examine witnesses against him who are required to testify

under oath and finally a decision made by an impartial judge.  Further, the hearing violated Section 29-14-6 of the Peace Officer's Employer-employee Relations Act because Plaintiff was not allowed to call witnesses, cross examine witnesses against him or produce relevant evidence during the hearing. (Pre-Trial Order, Section IV. A. ¶19, Terlecky testimony, Defendants' Exhibit 1-U)

44.     Plaintiff's termination was based in part upon the fact that Plaintiff had taken the memos to his attorney for advice in answering a memorandum of discipline prepared by Logan.  The memos had been taken to Plaintiff's attorney prior to Friday, June 25, 2004 and Plaintiff did not have a copy of the memorandum and the traffic citation in order to respond by deadline of Monday June 28, 2004.  Additionally, Plaintiff tried to contact his attorney over the weekend but was not able to do so.

45.     The failure of the City of Ruidoso Downs to provide a complete summary of the evidence or reasons for Plaintiff's termination prior to Plaintiff's pre-determination hearing and the prohibition of having witnesses and legal representation left Plaintiff at a severe disadvantage in defending himself against the termination.  Plaintiff did not even know what subjects or adverse evidence or incidents would arise during the hearing.

46.     Additionally, there were witnesses that Plaintiff desired to call to testify concerning policies and practices in the police department, his treatment by Logan, his involvement and actions taken both on the matters raised for discipline and in mitigation of the penalty sought to be imposed. Plaintiff talked to these witnesses who stated that they would testify if subpoenaed.  Since Plaintiff had no power of subpoena, he had no way to force these witnesses to testify.   Plaintiff wanted to call other officers to testify on his behalf and was denied this right when Dunigan stated that only the City Manager, the Personnel Manager and the Chief of Police could attend the Pre-Determination

hearing.  Plaintiff's right to call witnesses and present evidence during the appeal before the Defendant Mayor and Council was again violated when the City attorney informed Plaintiff's attorney that neither witnesses nor evidence would be allowed at the termination hearing.

47.     The City of Ruidoso Downs in course of the termination of Plaintiff Terlecky violated many provisions of the City of Ruidoso Downs Personnel Rules and Regulations, including progressive discipline.

48.     No reasonable employer would have terminated Plaintiff under the facts of this case.  Many of the performance issues raised at the pre determination hearing were several years old with some more than eight years old.  Plaintiff was not prepared to address these matters since they arose at the pre-determination hearing for the first time and some of the documents used against him had never been reviewed by Plaintiff prior to placement in his personnel file or prior to their use against him during the Pre Determination hearing.

49.     According to the City of Ruidoso Downs's Rule 800.1, "Whenever an employee's performance, work habits, or personal conduct fall below the satisfactory level, the employee's immediate supervisor shall inform the employee promptly and specifically of all such shortcomings.  If the failure by an employee to fulfill his or her responsibilities as an employee is not in an instance which requires immediate, severe disciplinary action, a reasonable period for improvement will be allowed before initiating written disciplinary action."   In this case a reasonable period for improvement was not allowed by Logan or the City prior to initiating written disciplinary action and the based upon the City's own handling of the discipline, the matters raised did not require "immediate severe disciplinary action."  (Pre-Trial Order, Section IV. A. ¶30, Terlecky, Logan and Waters testimony)

50.     Further, there is no evidence that the City of Ruidoso Downs made any provision for correcting any perceived deficiencies in Plaintiff' performance, but instead stacked matters in a one month period to make it appear that progressive discipline had been followed when in fact, the Notices were delivered nearly simultaneously to Plaintiff. This constitutes a violation of the Plaintiff's implied contract. (Terlecky testimony, Plaintiff's Exhibit 7)

51.     According to Personnel Rule 800.2, "It is the policy of the City to administer discipline in a progressive manner. Each alleged violation will be given careful consideration, investigated thoroughly, and disciplinary action will be administered in a fair and equitable manner." Plaintiff's alleged violations were not given careful consideration and disciplinary action was not administered in a fair and equitable manner. This constitutes a violation of the Plaintiff's implied contract. (Pre-Trial Order, Section IV. A. ¶22, Terlecky testimony)

52.     Plaintiff was not given a written reprimand which was required pursuant to Personnel Rule 802 (except in cases requiring immediate, severe disciplinary action which was not was not deemed necessary by Defendants). This constitutes a violation of the Plaintiff's implied contract. (Terlecky testimony)

53.     According to Personnel Rule 805, Plaintiff was entitled to a copy of any disciplinary action in his personnel file showing receipt by his acknowledgment hereof. "A copy of the written notice with the employe's acknowledgment thereof shall be forwarded to the Personnel Department Head who shall place it in the employuee's personnel file. A copy of the action shall be given to the employee..." Items of discipline were in his file that Plaintiff was unaware of and which were not acknowledged and which were used to justify the severe punishment of dismissal. This constitutes a

violation of the Plaintiff's implied contract and a violation of the Peace Officers Employer-Employee Relations Act, Section 29-14-7 N.M.S.A. (Defendants' Exhibit 8, Record on Review Exhibit 6)

54.    Plaintiff has not been evaluated on an annual basis to show "any noted short-comings," as required by the Ruidoso Downs Police Department Policy and Procedure Manual, Section 2-13a since 11-1-1993 at which time Plaintiff received clearly outstanding on many categories.  This constitutes a violation of the Plaintiff's implied contract.  (Terlecky testimony, Plaintiff's exhibit 3)

55.    There was no good and just cause justifying Plaintiff's termination and no misconduct justifying termination on the part of Plaintiff when the notice of termination was given to Plaintiff.  Further, the termination was unfair and unjust and inequitable. (Terlecky testimony)

56.    No meaningful hearing was provided either before or after Plaintiffs' termination. (Terlecky testimony)

57. Defendant City of Ruidoso Downs, had a duty to act in good faith and to deal fairly with Plaintiff in connection with Plaintiff's implied contract of employment.

58.    Defendant City of Ruidoso Downs has breached its duty to Plaintiff by arbitrarily failing to comply with the provisions of its Personnel Manual, the Peace Officer's Employer-Employee Relations Act and Police Department Policy and Procedure Manual as set out above and by stacking discipline upon Plaintiff in order to make it appear that progressive discipline was followed.

59.    The termination of Plaintiff from his employment without prior notice of all of the charges, and without a meaningful opportunity to be heard before a neutral judge with the assistance of counsel and with the right to call and cross examine witnesses who had been placed under oath

was in violation of Plaintiff's statutory rights, contractual rights, property rights and due process rights, in violation of the United States Constitution, Amendment 14. (Terlecky testimony)

60.     In depriving Plaintiff of these rights, Defendants were acting under color of the law of the State of New Mexico and the laws, ordinances, regulations, and customs of the Defendant City of Ruidoso Downs, rules and regulations.

61.     Because Defendant CITY OF RUIDOSO DOWNS's appointing and final authority in personnel matters is the City Mayor and Trustees, the violation of Plaintiff's due process rights may fairly be said to be the representation and execution of the policies or customs of Defendant CITY OF RUIDOSO DOWNS. (Pre-Trial Order, Section IV. A. ¶19, 23, 28, Terlecky testimony)

62.     The acts of the individual Defendants as set forth above, were done willfully, maliciously, and with callous and reckless indifference to and disregard of the Plaintiff's rights and as such form the basis for an award of punitive damages in the amount of $100,000.00.

63.     As a proximate result of Defendants' conduct in terminating Plaintiff as an employee, Plaintiff has been damaged by the loss of past earnings and employment benefits in the amount of $63,535.68. (Plaintiff's exhibit 4)

64.     As a proximate result of Defendants' conduct in terminating Plaintiff as an employee, and Defendants' creation of a hostile work environment, Plaintiff has been damaged by the loss of future earnings and employment benefits in the amount of $262,201.23. In the alternative, Plaintiff should be returned to work at the same grade and pay with all cost of living increases given other officers to date to Plaintiff's return to work. (Plaintiff's exhibit 4)

65.     As a proximate result of Defendants' conduct in terminating Plaintiff as an employee, Plaintiff has been damaged by the loss of retirement benefits in the amount of $194,447.42.

66.    As a proximate result of Defendants' conduct, Plaintiff's reputation as a faithful and diligent employee has been damaged and it has become difficult if not impossible for Plaintiff to secure comparable employment.

67.    As a result of Defendants' conduct, Plaintiff has had to hire an attorney and has incurred legal fees which should be awarded in accordance with the rules of this court.

68.    As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered humiliation and pain, emotional distress, and loss of enjoyment of life for which he should be compensated in the amount of $_____.

69.    As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered depravation of constitutional rights for which he should be compensated in the amount of $_____.

70.    As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered the cost and inconvenience of being without a job in the amount of $_____.

1.    Plaintiff seeks a whole record review of his hearing by this Court pursuant to its supplemental jurisdiction.

2.    Plaintiff is entitled to pre judgment interest from date of discharge to date of Judgment in the amount of 10% per annum.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this cause under 28 U.S.C. Sections 1331, 1343 and 1367. (Pre-Trial Order, Section II. A. ¶3)

2. The court has jurisdiction over the parties and subject matter of this action.

3.   Defendant City of Ruidoso Downs is a municipal corporation organized and existing pursuant to the laws of the State of New Mexico.  This Defendant is a person within the meaning of 42 U.S.C. 1983.  (Pre-Trial Order, Section IV. A. ¶1)

4.   Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales and Rene G. Olivo were all times material the Mayor and City Trustees each or whom acted individually and in their official capacity.   At all times relevant hereto, the acts of these Defendants complained of herein, were done under the colored pretense of statutes, ordinances, regulations, customs and usage's of the State of New Mexico, City of Ruidoso Downs, and by virtue of each Defendants' office with the City of Ruidoso Downs.  (Pre-Trial Order, Section IV. A. ¶2)

5.   Plaintiff was an employee of Defendant City of Ruidoso Downs, which is located in Lincoln County, New Mexico.  (Pre-Trial Order, Section IV. A. ¶3)

6.   Plaintiff's employment with the City of Ruidoso Downs was governed by and subject to The City of Ruidoso Downs Personnel Policy Manual (herein Rules or Manual) and the Ruidoso Downs Police Department Policy and Procedure Manual and the New Mexico Peace Officer's Employer-Employee Relations Act, all of which created an implied contract of employment.  (Pre-Trial Order, Section IV. A. ¶3, 24, Defendants' Exhibit 1U, June 1, 2004 Interoffice Memorandum, from Logan to Hightower, Terlecky and Waters, testimony of Terlecky and Logan)

7.   Plaintiff was subject to termination only for cause.  (Pre-Trial Order, Section IV. A. ¶3) 1.

8.   Under and by virtue of the City of Ruidoso Downs Personnel Policy Manual, Plaintiff had a legitimate expectancy of continued employment under an implied contract of employment terminable only for cause and recognized in the state of New Mexico.

9.  The City of Ruidoso Downs Personal Policy Manual establishes property rights under the laws of the State of New Mexico.  As such, Plaintiff was entitled to due process of law in the termination of his employment.

10.  Plaintiff's employment with the City was terminated by Waters on or about August 18, 2004 after a Pre Determination hearing on August 12 and 16, 2004.  During the Pre Determination hearing, Plaintiff was not allowed to have legal representation, not allowed to cross examine witnesses, not allowed to call witnesses, and was extensively questioned by Waters about incidents that were not part of the issues set out in the Uniform Notice of Disciplinary Action and for which Plaintiff was not prepared to respond. Plaintiff was not informed of and was not given notice of all the reasons for his termination prior to his informal Pre-Determination hearing.  These acts were in violation of Section 29-14-6 N.M.S.A. and Defendant's Personnel Rules and Plaintiff's right to due process which includes the right to notice of all allegations against Plaintiff prior to a full blown evidentiary hearing. (Pre-Trial Order, Section IV. A. ¶ 20, Terlecky testimony, Waters testimony, Defendants' Exhibit 3, Record on Review Exhibit 2)

11.  In the findings supporting termination, Waters relied upon incidents that occurred prior to the time that he worked for the City and he relied upon a demotion from Sergeant to Corporal which occurred in 1996 to support the termination knowing that the demotion had been reversed after appeal by Plaintiff under City personnel policies.  He also relied upon documents in Plaintiff's personnel file that had not been shown to Plaintiff prior to placement in the file in violation of 29-14-7 N.M.S.A. (Terlecky and Waters testimony, Defendants' Exhibit 3, Record on Review Exhibit 2)

12.  Plaintiff requested a termination hearing and appeal in accordance with the City personnel policies and the Peace Officer's Employer-Employee Relations Act.  Plaintiff through his

attorney requested subpoenas for witnesses and the right to call and cross examine witnesses and present evidence before the City Trustees. Plaintiff was denied these elementary constitutional and statutory rights. See 29-14-6 N.MS.A. (Plaintiff's Exhibit 9 and Defendants' Exhibit 4, Record on Review Exhibit 3)

13. On or about September 6, 2004, Plaintiff's termination by Waters was upheld by Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales and Rene G. Olivo, without any constitutionally adequate termination hearing, i.e., a hearing at which Plaintiff was previously provided a summary of the evidence against him constituting notice of his claimed performance deficiencies, and an opportunity through counsel to call witnesses who would be required to testify under oath and cross examine witnesses against him who are required to testify under oath and finally a decision made by an impartial judge. Further, the hearing violated Section 29-14-6 of the Peace Officer's Employer-employee Relations Act because Plaintiff was not allowed to call witnesses, cross examine witnesses against him or produce relevant evidence during the hearing. (Pre-Trial Order, Section IV. A. ¶19, Terlecky testimony, Defendants' Exhibit 1-U)

14. No reasonable employer would have terminated Plaintiff under the facts of this case. Many of the performance issues raised at the pre determination hearing were several years old with some more than eight years old. Plaintiff was not prepared to address these matters since they arose at the pre-determination hearing for the first time and some of the documents used against him had never been reviewed by Plaintiff prior to placement in his personnel file or prior to their use against him during the Pre Determination hearing.

15. There was no good and just cause justifying Plaintiff's termination and no misconduct justifying termination on the part of Plaintiff when the notice of termination was given to Plaintiff. Further, the termination was unfair and unjust and inequitable. (Terlecky testimony)

16. No meaningful hearing was provided either before or after Plaintiffs' termination. (Terlecky testimony)

17. Defendant City of Ruidoso Downs, had a duty to act in good faith and to deal fairly with Plaintiff in connection with Plaintiff's implied contract of employment.

18. Defendant City of Ruidoso Downs has breached its duty to Plaintiff by arbitrarily failing to comply with the provisions of its Personnel Manual, the Peace Officer's Employer-Employee Relations Act and Police Department Policy and Procedure Manual as set out above and by stacking discipline upon Plaintiff in order to make it appear that progressive discipline was followed.

19. The termination of Plaintiff from his employment without prior notice of all of the charges, and without a meaningful opportunity to be heard before a neutral judge with the assistance of counsel and with the right to call and cross examine witnesses who had been placed under oath was in violation of Plaintiff's statutory rights, contractual rights, property rights and due process rights, in violation of the United States Constitution, Amendment 14. (Terlecky testimony)

20. In depriving Plaintiff of these rights, Defendants were acting under color of the law of the State of New Mexico and the laws, ordinances, regulations, and customs of the Defendant City of Ruidoso Downs, rules and regulations.

21. Because Defendant CITY OF RUIDOSO DOWNS's appointing and final authority in personnel matters is the City Mayor and Trustees, the violation of Plaintiff's due process rights may

fairly be said to be the representation and execution of the policies or customs of Defendant CITY

OF RUIDOSO DOWNS.  (Pre-Trial Order, Section IV. A. ¶19, 23, 28,  Terlecky testimony)

22.   The acts of the individual Defendants as set forth above, were done willfully,

maliciously, and with callous and reckless indifference to and disregard of the Plaintiff's rights and

as such form the basis for an award of punitive damages in the amount of $100,000.00.

23.   As a proximate result of Defendants' conduct in terminating Plaintiff as an employee,

Plaintiff has been damaged by the loss of past earnings and employment benefits in the amount of

$63,535.68. (Plaintiff's exhibit 4)

24.   As a proximate result of Defendants' conduct in terminating Plaintiff as an employee, and

Defendants' creation of a hostile work environment, Plaintiff has been damaged by the loss of future

earnings and employment benefits in the amount of $262,201.23.  In the alternative, Plaintiff should

be returned to work at the same grade and pay with all cost of living increases given other officers to

date to Plaintiff's return to work.  (Plaintiff's exhibit 4)

25.   As a proximate result of Defendants' conduct in terminating Plaintiff as an employee,

Plaintiff has been damaged by the loss of retirement benefits in the amount of $194,447.42.

26.   As a proximate result of Defendants' conduct, Plaintiff's reputation as a faithful and

diligent employee has been damaged and it has become difficult if not impossible for Plaintiff to

secure comparable employment.

27.   As a result of Defendants' conduct, Plaintiff has had to hire an attorney and has incurred

legal fees which should be awarded in accordance with the rules of this court.

28.   As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered humiliation and pain, emotional distress, and loss of enjoyment of life for which he should be compensated in the amount of $_____.

29.   As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered depravation of constitutional rights for which he should be compensated in the amount of $_____.

30.   As a result of the Defendants' conduct, as set forth above, Plaintiff has suffered the cost and inconvenience of being without a job in the amount of $_____.

31.   Based upon a whole record review of his hearing by this Court pursuant to its supplemental jurisdiction, the termination was not in accordance with law as set forth herein.

32.   Plaintiff is entitled to pre judgment interest from date of discharge to date of Judgment in the amount of 10% per annum.

WHEREFORE, Plaintiff requests that this Court enter findings of fact and conclusions of law as set out above such further relief as the Court deems just and proper.

Respectfully Submitted,
Law Offices of Steven K. Sanders

electronically signed
STEVEN K. SANDERS
Attorney for Plaintiff
820 Second St., N.W.
Albuquerque, New Mexico 87102
505.243.7170

And

Law Offices of Freda Howard McSwane, P.C.

FREDA HOWARD McSWANE
Attorney for Plaintiff

1096 Mechem Drive, Suite 302
Ruidoso, New Mexico 88345
505-258-4321


I hereby certify that a true and correct copy of the foregoing was faxed to Richard E. Olson and James Hudson,  Attorneys for Defendants, Hinkle Hensley Shanor & Martin LLP, P.O. Box 10, 400 Penn Plaza # 700, Roswell, New Mexico 88202-0010, Fax number 505-623-9332, on this 6th day of February, 2006.

_____
Steven K. Sanders