IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANA TERLECKY,

       Plaintiff,

vs.                                               No. CIV-04-1121 BB DJS

CITY OF RUIDOSO DOWNS, a
Municipal Corporation, BOB A.
MILLER, individually and as Mayor
of the City of Ruidoso Downs and
SUSAN J. GARRETT, JUDY R.
MILLER, MARGIE R. MORALES and
RENE G. OLIVO, individually and as
Trustees of the City of Ruidoso Downs,
and ROBERT LOGAN, Chief of Police,

       Defendants.

### DEFENDANTS' REQUESTED
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

COME NOW the Defendants, by and through their attorneys of record HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P. (Richard E. Olson and James M. Hudson) and hereby submit these, their Requested Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1.     Plaintiff is a resident of Lincoln County, New Mexico.

2.     Defendant City of Ruidoso Downs is a New Mexico municipality.

3.      Defendants Margie Morales, Judy Miller, Susan Garrett and Rene Olivo are all residents of Lincoln County, New Mexico. They are duly elected City Councilors of the City of Ruidoso Downs, New Mexico.

4.      Defendant Bob Miller is a resident of Ruidoso Downs, New Mexico. He is the duly elected Mayor of Ruidoso Downs, New Mexico.

5.      The City of Ruidoso Downs is organized pursuant to §3-11-1,et seq., NMSA (1978). The City of Ruidoso Downs, New Mexico, has a mayor/council form of government. As such, the City Council must authorize the hiring and the termination of all City employees.

6.      Plaintiff was hired as an uncertified patrol officer by the City of Ruidoso Downs, New Mexico (then Village of Ruidoso Downs, New Mexico) in 1989. Plaintiff obtained his certification as a law enforcement officer in the State of New Mexico in due course. He thereafter served as a law enforcement officer for the City of Ruidoso Downs until August 16, 2004.

7.      At some point in time, prior to 1996, Plaintiff was promoted to sergeant.

8.      Since 1996, Plaintiff served under a succession of Chiefs of Police, consisting of David Hightower, Eddie Lerma, Chester Anderson and Robert Logan.

9.      Until recently, and specifically until the commencement of the tenure of Robert Logan ("Logan") as Chief of Police, the management style of the administration of the Ruidoso Downs Police Department can best be characterized as "laid back". Logan brought to the Department a management style that was more formal, more focused on the chain of command and less forgiving of errors and mistakes than past administrations.

10. Logan assumed the position of Chief of Police of the City of Ruidoso Downs Police Department in July of 2002.

11. The City of Ruidoso Downs, as part of its Personnel Policy Manual, has written policies establishing applicable procedures in situations, including discharge or termination. These are collected in Chapter 11 of the Ruidoso Downs Personnel Policy. Examples of conduct warranting disciplinary action are set out in Chapter 8 of the Ruidoso Downs Personnel Policy.

12. The Chief of Police of the City of Ruidoso Downs does not have the authority to impose a discharge or termination, but can only make a recommendation concerning same.

13. The policies of the City of Ruidoso Downs contemplate an informal predetermination hearing, with both sides having the opportunity to present evidence and witnesses in support of their positions. The employee in question may be accompanied by a representative of his or her own choosing, but that representative is not to be an attorney. The City Attorney for the City of Ruidoso Downs does not appear or participate in the predetermination hearing and is not present at the predetermination hearing.

14. The City Administrator of the City of Ruidoso Downs conducts the predetermination hearing. In the event that termination or discharge is recommended, a recommendation packet is prepared by the City Administrator for the Mayor and governing body.

15. A person discharged or terminated on the recommendation of the City Administrator may request the right to address the City Council concerning the discharge or termination. A discharge or termination recommendation adopted by the City Council

may be appealed pursuant to the Personnel Ordinance to the District Court for the Twelfth Judicial District pursuant to the provisions of Rule 1-074, NMRA.

16. Under Section 802 of the Ruidoso Downs Policy Manual, "progressive discipline will be utilized, but any or all steps may be waived based upon the severity of the infraction". If warranted, termination can be the first step.

17. Section 800.1 of the Ruidoso Downs Personnel Policy Manual provides, in pertinent part, as follows:

> Whenever the employee's performance, work habits or personal conduct fall below the satisfactory level, the employee's immediate supervisor shall inform the employee promptly and specifically of all such shortcomings. If failure by an employee to fulfill his or her responsibilities as an employee is not an instance that requires immediate, severe disciplinary action, a reasonable period for improvement will be allowed before initiating written disciplinary action.

18. In 1996, the governing body of the then Village of Ruidoso Downs, New Mexico, took action to demote Plaintiff as a result of difficulties Plaintiff had dealing with various of his subordinates.

19. In the year 2001, Plaintiff received a written reprimand from then Chief Eddie Lerma for failing to properly maintain his patrol vehicle. Plaintiff had traveled almost 15,000 miles without having had the oil changed on his patrol vehicle.

20. Prior to the commencement of Logan's tenure, the City of Ruidoso Downs had paid a significant sum to settle claims of sexual harassment as a result of Plaintiff's viewing of pornography at the work site.

21.     Shortly after the arrival of Logan as Chief, Logan counseled, by written memo, Plaintiff about his failure to send in paperwork in a timely fashion to the New Mexico Law Enforcement Academy.

22.     Thereafter, between August 2002 and June 2004, Logan wrote a series of at least nine memos or notes to Plaintiff addressing various instances where his conduct proved to be unsatisfactory. These included issues relating to handling of evidence, lack of supervision of subordinates, failure to request vacation time in a timely fashion, failure to follow the instructions and directions of a superior, failure to attend a mandatory meeting, failure to follow a written directive, failure to follow proper policy relating to the conversion of items from lost and found to office use, and mistakes made in the issuance of traffic citations. All of these memos were received by Plaintiff. The memos reflect a continuous inability of Plaintiff to address his shortcomings.

23.     On August 1, 2002, Plaintiff wrote a letter of apology to Logan for his failure to submit paperwork to the New Mexico Law Enforcement Academy.

24.     Pursuant to the provisions of the City of Ruidoso Downs Personnel Policy, written disciplinary action is instituted when a Uniform Notice of Disciplinary Action ("UNDA") form is completed.

25.     An UNDA form was completed by Logan regarding Plaintiff on June 21, 2004, giving a formal written warning arising out of Plaintiff's inappropriate handling of a report of a potentially dangerous felon being within the City of Ruidoso Downs.

26.     An UNDA form concerning Plaintiff was completed by Logan on June 22, 2004, providing a formal written warning to Plaintiff as a result of his excessive absenteeism.

27. An UNDA form concerning Plaintiff was completed by Logan on June 25, 2004, providing a formal written warning to Plaintiff for his failure to follow written directives relating to filling out traffic citations.

28. An UNDA form concerning Plaintiff was completed by Logan on June 21, 2004, recommending a suspension without pay of Plaintiff as a result of his handling of a child abduction case and his failure to issue an "Amber Alert" or make proper entries into the National Crime Information Computer system.

29. Copies of the UNDAs forms referenced in Paragraphs 25 through 28 were personally served on Plaintiff on July 29, 2004, by Steve Dunigan, Personnel Manager for the City of Ruidoso Downs. The UNDA referenced in Paragraph 28 recommending a suspension also included Notice of the Predetermination Hearing to be held. Plaintiff inquired of Dunigan as to whether he could have counsel present. He was informed that he could not have counsel present. There was no discussion regarding the ability to have witnesses present. Plaintiff objected to the date of the predetermination hearing, and it was changed to a convenient time.

30. A predetermination hearing pursuant to the Ruidoso Downs Personnel Policy was held on July 1, 2004, regarding the proposed suspension. It was conducted by John Waters, City Administrator. Plaintiff, Chief Logan, Deputy Chief David Hightower and Steve Dunigan, Personnel Manager, were also present. Pursuant to the policy of the City of Ruidoso Downs, there was no attorney present at the predetermination hearing. At this hearing, Plaintiff had the opportunity, but did not request or avail himself of the opportunity, to present evidence and witnesses. He also had and was afforded the opportunity and took

the opportunity to hear the charges and evidence against him and to present his position.

31.   On July 2, 2004, Waters made findings and conclusions as a result of the predetermination hearing finding a failure by Plaintiff to meet prescribed standards, to follow instructions or directives and to follow set procedures.  He affirmed the recommended suspension without pay.  Mr. Waters' findings were well grounded and justified.

32.   On June 28, 2004, Logan completed an UNDA form recommending termination of Plaintiff's employment as a result of his failure to complete tasks and insubordination in failing to respond to directives of Chief Logan.

33.   On June 14, 2004, Logan wrote a memo to Plaintiff and to Deputy Chief David Hightower about their failure to complete probationary evaluations for certain employees.  Logan gave them a deadline of June 21, 2004, to respond.

34.   On June 14, 2004, Logan wrote a memo to Plaintiff regarding traffic citations that had not been properly completed and requested a response.  Logan did not specify a time for response to this particular memorandum.

35.   On or about June 25, 2004, Logan wrote a memo to Plaintiff and to Deputy Chief David Hightower directing them to provide responsive memos to the requests noted in Paragraphs 33 and 34 by 8:00 a.m. on July 28, 2004.  Hightower responded within the time requested.  Plaintiff, on July 27, 2004, submitted a memo to Logan which stated that the memos had been "turned over to my attorney and will be answered in due course."  Plaintiff had not prepared a response to Logan for his attorney to review, did not engage his attorney to prepare a response and did not obtain advice regarding how to proceed.

36. On August 9, 2004, Logan completed a UNDA form recommending termination of Plaintiff's employment, arising out of his handling of certain cases. This UNDA form involved three matters which Plaintiff had been assigned to investigate which had not been worked by Plaintiff according to required procedures, two of which had been opened in 2003.

37. A predetermination hearing regarding the recommended termination of Plaintiff's employment was held on August 12th and 16th, 2004. This hearing was conducted by John Waters. Plaintiff, Chief Logan, Deputy Chief David Hightower and Steve Dunigan were also present. There was no attorney allowed or present at the predetermination hearing. Plaintiff had the opportunity to hear the charges and evidence against him and to present his position, which he availed himself of. Plaintiff also had the opportunity to present evidence or witnesses, but failed to avail himself of that opportunity.

38. Waters issued findings and conclusions on August 16, 2004, affirming the recommendation to terminate Plaintiff's employment, finding insubordination, failure to meet prescribed standards of the position, failure to follow instructions or directives and failure to follow set policies and procedures. Mr. Waters' findings and his recommendations were well grounded and justified.

39. Pursuant to the procedure provided for in the City of Ruidoso Downs Personnel Ordinance, Plaintiff requested the opportunity to address the City Council concerning his recommended termination.

40. On September 13, 2004, a hearing was held in executive session of the City Council where Plaintiff's attorney and the attorney for Ruidoso Downs made presentations.

The City Council voted unanimously to affirm the recommendation to terminate Plaintiff's employment. The City Council's decision was justified.

41. The Mayor, Bob Miller, did not vote on the motion to affirm the recommendation to terminate Plaintiff's employment. The Mayor votes only in the event of a tie.

42. There is no evidence that either Mayor Miller or any of the individual councilors, Garrett, Miller, Morales or Olivo bore any animosity toward Plaintiff.

43. Prior to the time that Plaintiff received the UNDA forms on June 29, 2004, Plaintiff had retained counsel to advise him concerning matters relating to his employment. To suggest that Plaintiff was operating under the assumption that he could not present witnesses is disingenuous.

44. The hearing regarding Plaintiff's termination took place in excess of a month after the hearing regarding his suspension. Plaintiff related no independent discussion with Steve Dunigan regarding whether or not he could present witnesses at his termination hearing.

45. Plaintiff never requested at either the July 2nd, 2004 or the August 12th and 16th, 2004 hearings the right to call witnesses, nor did he indicate he had any desire to call witnesses. When given the opportunity to present evidence, cross examine witnesses or present witnesses, Plaintiff elected to rely on written memoranda that he had submitted in support of his position.

46. At the Plaintiff's suspension hearing, there was some detailed discussion, and ultimately findings were made by Mr. Waters, concerning Plaintiff's prior employment history with the City of Ruidoso Downs and specific issues prior supervisors had with him.

Plaintiff, therefore, knew and understood, going into the termination hearing, that these matters might be of import and could be inquired into. Plaintiff had full and adequate notice, therefore, of the significance of these issues. In addition, copies of Chief Logan's memos were attached to the UNDA received by Plaintiff.

47. After Plaintiff's termination, Plaintiff made very minimal efforts to obtain further employment. Plaintiff, in a moment of candor, advised John Penn, an Episcopal Priest who is Plaintiff's spiritual advisor, that he did not intend to seek employment until the litigation against the City of Ruidoso Downs was over and he could see how much money he could get. Plaintiff made no attempt to look for any law enforcement employment, outside of a few isolated areas in Lincoln County, although he did seek employment far afield as a shooting instructor.

48. After the termination of Plaintiff's employment, while his desk was being cleaned, evidence that had not been logged in, including marijuana, was discovered in Plaintiff's desk.

49. Evidence was presented that there were and usually are significant employment opportunities for certified law enforcement officers with various departments around the State of New Mexico. Had Plaintiff aggressively sought employment, he no doubt could have obtained same.

50. Plaintiff collected unemployment benefits for a period of _____ weeks from the City of Ruidoso Downs.

51. Plaintiff, since his termination from employment with the City of Ruidoso Downs, has been assessed as having a 45% service related disability through the Veterans

Administration.  This disability relates to an asthmatic condition, a knee injury and depression.

52.    Plaintiff has not submitted any evidence that he has sustained any emotional distress as a result of any deprivation of due process.  Any emotional distress the Plaintiff has suffered is as a result of other events, including Plaintiff's failure to pursue alternative employment.

53.    Even if Plaintiff had counsel available at the evidentiary stage of the hearing process, given Plaintiff's continued and repeated failure to meet prescribed standards at work, follow directions and insubordination, Plaintiff would, in all likelihood, still have been terminated.

## **CONCLUSIONS OF LAW**

1.    This Court has jurisdiction over the parties hereto and the subject matter hereof.

2.    Plaintiff had an expectancy of further employment with the City of Ruidoso Downs, which constitutes a property right.  See, *Tonkavich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998).  A property right cannot be taken or terminated without due process of law.  See, *Id.*

3.    Procedural due process requires that one have notice of the charges against him and a meaningful opportunity to be heard.  This normally, in the employment context, contemplates a hearing or hearings at which one has the ability to hear the charges against one, respond to the charges, examine witnesses presenting evidence against one, present evidence in one's favor and make arguments supporting one's position.  *Id.*

4.     Procedural due process has not, historically, been thought to require compulsory process for the attendance of witnesses, see, *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994), or representation of counsel, see, *McClure v. Independent School Dist. No. 16,* 228 F.3d 1205,1211 (10th Cir. 2000).

5.     Plaintiff, in the instant case, was afforded procedural due process.

6.     The New Mexico Law Enforcement Employer/Employee Relations Act contains various aspirational statements, but does not provide for any specific private right of action to enforce its provisions.   Accordingly, Plaintiff cannot pursue any claim predicated upon the New Mexico Law Enforcement Employer/Employee Relations Act.

7.     In any event, Plaintiff received all of the procedural protections due him under the New Mexico Law Enforcement Employer/Employee Relations Act.

8.     New Mexico provides a mechanism for a review on certiorari of judicial or quasi-judicial type decisions made by local governmental entities.  See, Rule 1-075 NMRA 206; *Zamora v. Village of Ruidoso Downs,* 120 N.M. 778, 780, 907 P.2d 182, 184 (1995).

9.     Based on its review, the Court finds no reason to set aside the determination of the Ruidoso City Council in connection with Plaintiff's termination.  Substantial evidence supports the decision of the City Council, there is no indication that the City Council acted fraudulently, arbitrarily or capriciously, the action of the City Council was inside the scope of its authority and appears to be in accordance with law.

While Defendants believe that there should be no finding of liability, and without admission of liability, Defendants submit the additional following proposed conclusions of law in the event that the Court finds liability:

10. Because Plaintiff's employment would have been terminated even if different procedures were followed, Plaintiff cannot recover compensatory damages.

11. Plaintiff is only entitled to recover nominal damages in the amount of One and no/100 Dollar ($1.00).

12. Plaintiff failed to mitigate damages, and is not entitled to recovery compensatory damages.

13. Any emotional distress suffered by Plaintiff was not proximately caused by an deprivation of due process, and damages for emotional distress cannot be recovered.

    Respectfully submitted,
    HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.


By:   Filed electronically 2/6/06
    Richard E. Olson
    James M. Hudson
    P.O. Box 10
    Roswell, NM 88202
    (505) 622-6510
Attorneys for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2006, a true and correct copy of Defendants' Requested Findings of Fact and Conclusions of Law was sent via First Class Mail, postage prepaid, to Plaintiff's counsel:

| | |
|---|---|
| Steven K. Sanders | Freda Howard McSwane |
| 820 Second Street, NW | 1096 Mechem Dr., Suite 302 |
| Albuquerque, NM 87102 | Ruidoso, NM 88345 |

    HINKLE, HENSLEY, SHANOR & MARTIN, L.L.P.

By:   signed/ Richard E. Olson
    Richard E. Olson
    James M. Hudson