IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

DANA TERLECKY,

Plaintiff,

v.                                                      No. CIV 04-1121 BB/DJS

CITY OF RUIDOSO DOWNS, a municipal
corporation, BOB A. MILLER, individually
and as Mayor of the City of Ruidoso Downs,
and SUSAN J. GARRETT, JUDY R.
MILLER, MARGIE R. MORALES, and
RENE G. OLIVO, individually and as Trustees
of the City of Ruidoso Downs, and ROBERT
LOGAN, Chief of Police,

Defendants.


COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW ON LIABILITY


THIS MATTER came on for a bench trial on February 13, 14, and 15, 2006, and

having adduced all the evidence, considered the closing arguments, memoranda of law,

and proposed findings of fact and conclusions of law submitted by the parties, and being

fully advised, the following are the Court's Findings of Fact and Conclusions of Law:

## Findings of Fact

1.     Defendant City of Ruidoso Downs ("City") is organized as a municipal

corporation and existing pursuant to § 3-11-1 *et seq.* NMSA 1978.

2.     Defendants Margie Morales, Judy Miller, Susan Garrett, and Rene Olivo are all residents of Lincoln County, New Mexico.  They are duly elected City Trustees (sometimes referred to as Councilors, as that is the term used in New Mexico statutes) of the City of Ruidoso Downs, New Mexico.

3.     Defendant Bob Miller is a resident of Ruidoso Downs , New Mexico.  He is the duly elected Mayor of Ruidoso Downs, New Mexico.

4.     The City of Ruidoso Downs is organized pursuant to § 3-11-1 *et seq.* NMSA 1978 as a mayor/council government.  Under this form of government, the City Council (Trustees) must authorize termination of all employees.

5.     Plaintiff was hired by the City on or about August 3, 1989, and later was promoted to Sergeant, a classified position.

6.     Plaintiff's employment with the City was governed by, and subject to, the City of Ruidoso Downs Personnel Policy Manual ("Manual" or "Rules") and the Ruidoso Downs Police Department Policy and Procedure Manual.

7.     The City of Ruidoso Downs, as part of its Manual, has written policies establishing applicable procedures in situations, including termination.

8.     The City's Manual establishes property rights under the laws of the State of New Mexico.  Plaintiff was therefore entitled to due process of law in the termination of his employment.

9.     Plaintiff served under at least four different Police Chiefs before Robert Logan became Chief of Police for the City in July 2002.

10.     On or about June 14, 2004, Chief Logan prepared a City of Ruidoso Downs interoffice memorandum addressed to Plaintiff and Deputy Chief David Hightower.  It requested a response concerning apparent mistakes in a traffic citation issued by Plaintiff.  This memorandum had no deadline for responding.

11.     As a fifteen-year veteran, Plaintiff accumulated substantial use-it-or-lose-it time. With Chief Logan's knowledge and permission, Plaintiff was scheduled to be on vacation from June 28, 2004, until July 22, 2004.

12.     Knowing that Plaintiff was scheduled to be off, Logan prepared another City of Ruidoso Downs interoffice memorandum on Friday afternoon, June 25, 2004. In it Logan demanded Plaintiff's response to the June 14 memorandum by Monday, June 28, 2004, at 0800 hours.  This memorandum was delivered by placing it in Plaintiff's office mail box on June 25.  It was not received by Plaintiff until Saturday, June 26, 2004.

13.     Plaintiff was not able to complete a response to the traffic citation memorandum because he had previously delivered the necessary documents to his attorney's office.  After learning that Logan desired a response by 8:00 AM on June 28, 2004, Plaintiff attempted to contact his attorney but the attorney had left the office for the weekend and Plaintiff could not get in touch with her.

14.   Plaintiff did reply to the memorandum to Logan by 0800 hours on June 27, 2004, indicating he did not have access to the documents and a substantive response would be provided in due course.

15.   On or about June 18, 2004, Chief Logan began preparation of a series of Uniform Notice of Disciplinary Action forms ("Notices").  The goal of these simultaneous Notices was to "paper" Plaintiff's personnel file to create the appearance progressive discipline was being administered prior to Plaintiff's termination.

16.   Four separate Notices of Disciplinary Action were prepared by Logan and approved by Steve Dunigan, the City Personnel Manager, and John P. Waters, the City Administrator, at virtually the same time.  They are dated June 21-24, 2004.  All were delivered to Plaintiff on or about June 29, 2004.  This was the second day of Plaintiff's vacation.

17.   The Notice of June 21, 2004, (Exhibit 1-R) claimed that Plaintiff failed to meet prescribed standards of work and stated that there had been no previous disciplinary history for similar incidents.  Although Deputy Chief Hightower had investigated this claim and found "no policy or statute that deals directly with the issue," this memorandum stated that a written warning was the appropriate punishment.

18.   A second Notice (Exhibit 1-T) dated June 22, 2004, pertained to excessive absenteeism and indicated that there had been no previous discipline regarding

4

this subject.  The trial testimony makes clear this memorandum is based on an

incorrect calculation of Plaintiff's sick leave and absences, and the "excessive

discipline" standard was misapplied to Plaintiff.  This memorandum stated that

a written warning was the appropriate punishment.

19.     The Notice dated June 25, 2004, (Exhibit 1-S) pertained to the improper citations

previously raised by Logan in his June 14 memo.  (This was also dealt with in

another memo by Deputy Hightower the same date, June 25.)  This memorandum

stated that a written warning was the appropriate punishment for the incidents.

20.     Another Notice dated June 21, 2004, pertained to failure to meet prescribed

standards of work, failure to follow instructions or directives, and violation or

disregard of personnel policies.  This Notice "stacked" the other written warning

Notices to arbitrarily increase the punishment and serve as a predicate for

termination.  It states that there had been a previous written warning on the same

day, June 21, 2004.  The Notice used the "prior" warning to recomend that

Plaintiff's punishment would be a suspension from work for forty (40) hours.

21.     On June 28, 2004, the day prior to the delivery of the above Notices to Plaintiff,

Logan prepared yet a fifth Notice of Disciplinary Action requesting Plaintiff's

discharge for the same incidents referenced above, plus a claim of insubordination

for failure of Plaintiff to respond to Chief Logan's June 25 memorandum

concerning the mistaken traffic citations.  Like the other Notices, it was approved

and signed by City Administrator Waters and approved and signed by Personnel Manager Dunigan on June 28. Nonetheless, it was withheld until after the hearing scheduled for June 30 and not delivered by Dunigan until July 2, 2004.

22. The first four Notices were delivered to Plaintiff on June 29, 2004, and stated that a predetermination hearing would be held June 30, 2004. When the notice of hearing was served, Plaintiff asked Personnel Manager Dunigan how he was to get an attorney and witnesses for a predetermination hearing to be held the next day. Dunigan stated that the only people that would attend the hearing were the City Manager, the Chief of Police, the Personnel Manager, and Plaintiff. The hearing was then rescheduled to give Plaintiff one additional day, until July 1.

23. On July 1 and 2, 2004, Waters held a predetermination hearing on the first four Notices. As represented, the only people present were Waters, Dunigan, Hightower and Plaintiff. During the hearing, Waters clearly assumed the role of prosecutor and interrogated Plaintiff about his previous work history even though Plaintiff was given no notice that the hearing would pertain to any matter other than those referenced in the disciplinary Notices delivered to him two days earlier. Plaintiff was not allowed to have an attorney present and was never informed he could examine or call witnesses. At the conclusion, Waters imposed the 40-hour suspension without pay on Plaintiff.

24.     After the hearing on July 2, 2004, the fifth Notice requesting discharge and dated June 28, 2004, was delivered to Plaintiff by Dunigan along with the Summary of Findings and Conclusion prepared by Waters upholding the 40-hour suspension.

25.     On August 9, 2004, Logan prepared, and Waters approved, the sixth Notice of Disciplinary Action in six weeks, requesting Plaintiff's termination for failure to complete reports on a timely basis.

26.     Since Plaintiff was on vacation leave virtually the entire time the Notices were prepared and served and the first hearing held, the City never made any provision for correcting any perceived deficiencies in Plaintiff's performance; rather, all these matters as well as several alleged historical deficiencies were stacked into a six-week period to make it appear that progressive discipline had been followed.

27.     At the predetermination hearing on August 12 and 16, 2004, Waters again extensively questioned Plaintiff about numerous historical incidents that were not set out in the Notices and to which Plaintiff was not prepared to respond.  For example, Waters cited Plaintiff's demotion from Sergeant to Corporal which occurred in 1996 knowing that the demotion had actually subsequently been reversed under City personnel policies.  He also referred to several documents Plaintiff was never notified were even being placed in his personnel file.

28.    City Administrator Waters affirmed Chief Logan's termination recommendation. Like the prior predetermination hearing, Plaintiff was not allowed to have legal representation and was never informed he could call or cross-examine witnesses. Since Waters made the accusations and was also the hearing officer, Plaintiff was not able to "cross-examine" him.  Plaintiff did approach a fellow officer to testify, but he said because of his own City employment he would appear only if subpoenaed.  There is no subpoena authority for City predetermination hearings.

29.    Plaintiff, through his counsel, requested a termination hearing and appeal in accordance with the City personnel policies and consistent with the New Mexico Peace Officer's Employer-Employee Relations Act.  § 29-14-1 NMSA 1978. Plaintiff's attorney requested subpoenas for witnesses and the right to call and cross-examine witnesses and present evidence before the City Trustees.  These requests were refused.

30.    On or about September 6, 2004, Plaintiff's termination by Waters was upheld by Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales, and Rene G. Olivo without a full termination hearing which provided adequate notice of Plaintiff's claimed performance deficiencies and the power to compel witnesses to come and testify under oath.

31.    Again, Plaintiff did not know what subjects or incidents would be raised by the City Administrator during the Trustees' consideration.  The failure of the City

8

to provide a summary of the evidence or reasons for Plaintiff's termination prior to Plaintiff's predetermination hearing left Plaintiff at a severe disadvantage in defending against the termination at that level, and since the Trustees refused a formal hearing, no opportunity to adequately address these prejudicial accusations was ever provided.

32.   There were witnesses Plaintiff desired to call to testify concerning policies and practices in the police department, his treatment by Logan, his involvement and actions taken both on the matters raised in the Notices of Disciplinary Action and in mitigation of the penalty sought to be imposed.

33.   Defendant City had a duty to act in good faith and to deal fairly with Plaintiff in connection with Plaintiff's implied contract of employment.

34.   In response to inquiries on a local radio show, City Administrator Waters stated Plaintiff was fired.

35.   There is no evidence any of the Trustees bore any animosity toward Plaintiff.

36.   Plaintiff applied for numerous jobs both within and outside law enforcement, but was consistently denied employment.

<u>Conclusions of Law</u>

1.   This Court has jurisdiction over the subject matter and the parties to this action under 28 U.S.C. §§ 1331, 1343, and 1367.

2.     Defendant City of Ruidoso Downs is a municipal corporation organized and existing pursuant to the laws of the State of New Mexico.  Defendant City is a person within the meaning of 42 U.S.C. § 1983.  *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993).

3.     Defendants Bob A. Miller, Susan J. Garrett, Judy R. Miller, Margie R. Morales, and Rene G. Olivo were all times material the Mayor and City Trustees of the City of Ruidoso Downs, each of whom acted individually and in their official capacity.

4.     Plaintiff was an employee of the City of Ruidoso Downs.

5.     Plaintiff's employment with the City of Ruidoso Downs was governed by and subject to the City of Ruidoso Downs Personnel Policy Manual and the Ruidoso Downs Police Department Policy and Procedure Manual, which created an implied contract of employment.

6.     Under Plaintiff's contract he was subject to termination only for cause.

7.     Section 800.1 of the City's Manual provides, in pertinent part, as follows:

> Whenever the employee's performance, work habits or personal conduct fall below the satisfactory level, the employee's immediate supervisor shall inform the employee promptly and specifically of all such shortcomings.  If failure by an employee to fulfill his or her responsibilities as an employee is not an instance that requires immediate, severe disciplinary action, a reasonable period for improvement will be allowed before initiating written disciplinary action.

8.      According to Rule 800.2, "It is the policy of the City to administer discipline in a progressive manner.  Each alleged violation will be given careful consideration, investigated thoroughly, and disciplinary action will be administered in a fair and equitable manner."   Plaintiff's alleged violations were not given careful consideration and disciplinary action was not administered in a fair and equitable manner.  This constitutes a violation of Plaintiff's implied contract of employment under New Mexico law.  *New Mexico Regulation & Licensing Dept. v. Lujan*, 979 P.2d 744 (N.M. App. 1999); *see also Chicharello v. Employment Sec. Div. N.M. Dept. of Labor*, 930 P.2d 170 (N.M. 1996).

9.      Plaintiff's contractual rights under the allegations here required that Plaintiff be (1) notified promptly and clearly of shortcomings and (2) subject to progressive discipline.  These were violated by the City's failure to provide annual reviews and the "stockpiling" of Uniform Notices of Discipline in late June 2004.  *Cf. Guntharp v. Cobb County*, 723 F. Supp. 771 (N.D. Ga. 1989), *aff'd*, 898 F.2d 159 (11th Cir. 1990) (but finding no such "stockpiling" on facts there).

10.     Under, and by virtue of, the City's Manual, Plaintiff had a property right in his legitimate expectancy under New Mexico law of continued employment.  Plaintiff was therefore entitled to due process in the termination procedure.  *Goldberg v. Kelly*, 397 U.S. 254 (1970).

11.    To support termination, Waters cited incidents that occurred prior to the time
       that he worked for the City and he relied upon a demotion from Sergeant to
       Corporal which occurred in 1996 when he knew or should have known that the
       demotion had been reversed.  He also relied upon documents in Plaintiff's
       personnel file that had not been shown to Plaintiff prior to placement in the file
       in violation of § 29-14-7 NMSA 1978.

12.    During the predetermination hearing on August 12 and 16, 2004, Plaintiff was not
       informed he could cross-examine or call witnesses.  Moreover, since he was
       extensively questioned about historical events by the hearing officer, Waters, he
       could not practically cross-examine the "witness."  *Tyler v. Swenson*, 427 F.2d
       412, 415 (8th Cir. 1970).  This was compounded by the absence of counsel.
       *Application of Gault*, 387 U.S. 1 (1967).

13.    Plaintiff was not given adequate notice of what issues and evidence Waters would
       raise at the June or August hearings.  This is a requirement of due process.
       *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004).

14.    Plaintiff requested a full adversarial hearing to the Trustees.  Plaintiff through
       his attorney requested subpoenas for witnesses and asked to present evidence
       before the City Trustees.  These requests were denied.

15.    Prior to final termination, an employee is entitled to at least one "full blown
       adversarial hearing."  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517

12

(10th Cir. 1998); *Urban v. Tularosa*, 1998 WL 694465 **6 (10th Cir. 1998) (unpublished).  In most situations this includes the right to legal representation and the right to cross-examine and call witnesses. *Tonkovich*; *Goldberg v. Kelly*, 397 U.S. at 269; *Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1989), *mod. other grounds*, 928 F.2d 920 (10th Cir. 1991).  Plaintiff was never granted these fundamental rights.

16.    The termination of Plaintiff's employment without prior notice of all of the charges, and without a meaningful opportunity to call and/or cross-examine witnesses before a neutral judge, was in violation of Plaintiff's property rights under the Due Process guarantees of the Fourteenth Amendment of the United States Constitution.

17.    Because the City of Ruidoso Downs's final authority in personnel matters is the Mayor and Trustees, the violation of Plaintiff's due process rights may fairly be said to be the representation and execution of the policies or customs of the City of Ruidoso Downs.  *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157 (10th Cir. 2003); *Miller v. City of Mission*, 705 F.2d 368 (10th Cir. 1983).

18.    In depriving Plaintiff of his property rights, Defendants were acting under color of state law as well as the ordinances, rules, regulations, and the customs of the City of Ruidoso Downs.  *Vinyard v. King*, 728 F.2d 428 (10th Cir. 1984).

19.    Plaintiff has made reasonable efforts to find employment within a viable geographical region. *Smith v. FDC Corp.*, 787 P.2d 433, 440 (N.M. 1990). He therefore adequately mitigated the damage caused by his wrongful termination.

20.    Plaintiff should immediately be returned to the City's police force at the same grade and pay with all cost-of-living increases given other officers prior to Plaintiff's return to work.

21.    Plaintiff should recover his costs and legal fees in accordance with law.


    All tendered findings and conclusions not incorporated herein are deemed Denied.

    Since no evidence as to the viability of reinstatement was presented, the present record on damages is incomplete. An additional one-half day of hearing limited to damages will be set during the week of May 1, 2006, at the United States Courthouse, 500 North Richardson, Roswell, New Mexico.

    DATED at Albuquerque this 27th day of March, 2006.


BRUCE D. BLACK
United States District Judge